# EXHIBIT A

LAW OFFICES OF TODD M. FRIEDMAN, P.C.
Todd M. Friedman (216752)
tfriedman@toddflaw.com
Adrian R. Bacon (280332)
abacon@toddflaw.com
23586 Calabasas Rd., Suite 105
Calabasas, CA 91302
Telephone: (323) 306-4234

LAW OFFICES OF ZEV B. ZYSMAN
A Professional Corporation
Zev B. Zysman (176805)
zev@zysmanlawca.com
15760 Ventura Boulevard, Suite 700
Encino,CA 91436
Telephone: (818) 783-8836

*Attorneys for Plaintiff and the Proposed Class*

ELECTRONICALLY FILED
Superior Court of California,
County of San Diego
    2/10/2026 1:28:23 PM

Clerk of the Superior Court
By  C. Hines         ,Deputy Clerk

**SUPERIOR COURT OF THE STATE OF CALIFORNIA
FOR THE COUNTY OF SAN DIEGO**

| | |
|---|---|
| ALEXIS ERDOS-MAJOR, on Behalf of Herself and All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> ACCENTURE LLP, NEURAFLASH; and DOES 1 through 100, inclusive, and each of them, <br><br> Defendants. | Case No.    26CU007457C <br><br> **CLASS ACTION** <br><br> **COMPLAINT FOR VIOLATIONS OF:** <br><br> **STATUTORY DAMAGES AND INJUNCTIVE RELIEF** <br><br> **DEMAND FOR JURY TRIAL** |

CLASS ACTION COMPLAINT

A-2

Plaintiff Alexis Erdos-Major ("Plaintiff"), brings this action against Defendants Accenture LLP, NeuraFlash, and DOES 1-100 (collectively referred to as "Defendants") on behalf of herself, and all others similarly situated, upon information and belief, except as to her own actions, the investigation of her counsel, and the facts that are a matter of public record, as follows:

## INTRODUCTION

1. This class action arises out of Defendants' policy and practice of intentionally recording and/ or monitoring[1] inbound telephone calls made by California consumers to Saks OFF 5th customer service telephone number without the knowledge or consent of all parties, in violation of California's Invasion of Privacy Act, California Penal Code § 630 *et seq*. Saks OFF 5th's telephone number at 801-207-7043 may be referred to as Saks OFF 5th's "customer service telephone number."

2. During the relevant time period, Defendants intentionally and surreptitiously recorded and/ or monitored inbound telephone calls by designing, implementing, migrating, operating, and optimizing cloud-based contact center technology used by Saks, including Amazon Connect and related call recording and analytics functionality. Defendants did so without warning or disclosing to inbound callers that their calls might be recorded or monitored.

3. Defendants' policy and practice of recording and monitoring telephone conversations without the consent of all parties violates the California Invasion of Privacy Act (Penal Code §§ 630 *et seq*. ("CIPA")). Specifically, Defendants' acts and practices violate Penal Code § 632.7. Penal Code § 632.7 is violated the moment the recording or monitoring of a telephone communication is made without the knowledge or consent of all parties thereto, regardless of whether it is subsequently disclosed. The only intent required is that the act of recording itself be done intentionally. There is no requisite intent on behalf of the party doing the

---

[1] "Monitor," as used in this Complaint, includes both (a) the common understanding of a person listening in on a call and (b) "intercepting," as that term is used in the California Invasion of Privacy Act. Thus, "monitor" will be used in lieu of "intercept" throughout this Complaint.

surreptitious recording or monitoring to break California law or to invade the privacy rights of any other person. Moreover, there is no requirement under Penal Code § 632.7 that the communication be confidential.

4.    Penal Code § 630 *et seq*. plays an important role in protecting the privacy of California residents. As recognized by the California Supreme Court, secret monitoring and recording "denies the speaker an important aspect of privacy of communication, the right to control the nature and extent of the firsthand dissemination of his statements." *Ribas v. Clark*, 38 Cal. 3d 355, 361 (1985) (citations omitted). The California Supreme Court has declared that California has a "strong and continuing interest in the full and vigorous application" of the provisions that prohibit "the recording of telephone conversations without the knowledge or consent of *all* parties to the conversations." *Kearney v. Salomon Smith Barney, Inc*., 39 Cal. 4th 95, 126 (2006) (italics in original). In *Kearney*, the California Supreme Court explained that if a company wants to record calls as part of its routine business activity, it can avoid liability by giving an appropriate warning at the beginning of each call. "A business that adequately advises all parties to a telephone call, at the outset of the conversation, of its intent to record the call would not violate the provision." *Id.* at 118. Furthermore, businesses can take unfair advantage of consumers if they do not disclose that the calls are being recorded, by "selectively disclosing recordings when disclosure serves the company's interest, but not volunteering the recordings' existence (or quickly destroying them) when they would be detrimental to the company." *Id.* at 126. The California Supreme Court has declared that Penal Code § 632.7 makes it illegal to record *any* communication involving cellular or cordless telephones without regard to whether the communication is confidential. *Flanagan v. Flanagan*, 27 Cal. 4th 766, 771 fn. 2 (2002). Moreover, in *Smith v. LoanMe, Inc*., 11 Cal. 5th 183, 202–203 (2021), the California Supreme Court held that Penal Code "section 632.7 prohibits parties as well as nonparties from intentionally recording a communication transmitted between a cellular or cordless telephone and another device without the consent of all parties to the communication."

5.    As a result of Defendants' violations, all individuals who called Saks customer service telephone numbers while they were in California and were recorded and/ or monitored

by Defendants surreptitiously and without disclosure are entitled to an award of statutory damages as set forth in Penal Code § 637.2 and injunctive relief as detailed therein.

## JURISDICTION & VENUE

6.      This Court has subject matter jurisdiction over the cause of action asserted herein pursuant to Article VI, § 10 of the California Constitution, California Penal Code §§ 632.7 and 637.2. In the aggregate, the damages caused to the members of the Class as defined below exceed the jurisdictional minimum of this Court, but neither the Plaintiff nor any member of the Class individually has suffered damages of, at least, $75,000.

7.      This Court has personal jurisdiction over the Defendants named herein because Defendants do sufficient business in California, have sufficient minimum contacts with California or otherwise intentionally avails themselves of the markets within California through their systematic and continuous business activities and operations here to render the exercise of jurisdiction by California courts and the application of California law to the claims of the Plaintiff permissible under traditional notions of fair play and substantial justice. Specifically, Defendants provide cloud-based technology services, contact center platforms, call recording and monitoring systems, and managed services that are purposefully directed at and used in connection with California consumers, including through call center platforms and customer service systems that serve consumers located throughout California. In addition, Plaintiff's rights were violated in California and these violations arose out of her contact with Defendants from and within California. Further, there is no federal question at issue as the claims herein are based solely on California law.

8.      Accenture plc is a multinational technology company headquartered in Dublin, Ireland and the global parent for Defendant Accenture LLP.  Defendant Accenture LLP's United States headquarters and principal place of business for its U.S. operations is located in New York, New York, which serves as the main hub for its United States operations.

9.      Defendant NeuraFlash is a business entity headquartered in Burlington, Massachusetts, which serves as the main hub for its operations as a leading artificial intelligence and Salesforce partner.

CLASS ACTION COMPLAINT

A-5

10.     Venue is proper in this Court because California Code of Civil Procedure §§395 and 395.5, and case law interpreting those sections, provide that if a foreign business entity fails to designate with the office of the California Secretary of State a principal place of business in California, it is subject to being sued in any county in the State that plaintiff desires. On information and belief, as of the date this Complaint was filed, Defendants are foreign business entities that have failed to designate a principal place of business in California with the office of the Secretary of State. Thus, Defendants have no right to any particular venue and Plaintiff may file this Complaint in any county in California. *See Hardin v. San Jose City Lines,* 103 Cal. App. 2d 688, 689 (1951); *see also Easton v. Sup. Ct. (Schneider Bros, Inc.)* 12 Cal. App. 3d 243, 246-47 (1970).

## **PARTIES**

11.     Plaintiff Alexis Erdos-Major (herein referred to as "Plaintiff") is an individual and resident of California. It is alleged that on June 18, 2025 and July 1, 2025, while Plaintiff was physically present in the State of California, she called Saks OFF 5th's customer service telephone number at 801-207-7043 and had telephonic communications with live representatives of Defendants while using her cellular telephone. Plaintiff is informed and believes and thereon alleges, that the communications were surreptitiously recorded and/or monitored by Defendants, without first providing her notice and without first obtaining her consent to record and/or monitor the telephone communications.

12.     Defendant NeuraFlash is a technology consulting, implementation, and managed services company that publicly represents itself as both an Amazon Web Services and Salesforce consulting and implementation partner specializing in contact center transformation, including Amazon Connect, Salesforce Service Cloud Voice, analytics, automation, call tagging, agent evaluation, and post implementation managed services. NeuraFlash markets itself as an expert partner that designs, implements, migrates, and optimizes cloud-based contact center solutions for enterprise customers.

13.     NeuraFlash publicly identifies Saks Fifth Avenue as one of its customers and

represents, through its website and published video content, that it partnered with Saks to transform Saks' customer service operations and migrate Saks' entire contact center from an on premise telephony system to Amazon Connect. Saks OFF 5TH is a sister brand to Saks Fifth Avenue, with both operating under the same partner corporation – Saks Global Enterprises LLC. In videos published by NeuraFlash, Saks representatives state that Saks selected NeuraFlash as its implementation partner to migrate to Amazon Connect "as quickly as possible," and further state that Saks' contact center was transitioned to Amazon Connect "in two months with zero downtime."

14. NeuraFlash further represents that its work for Saks included implementing Salesforce Service Cloud Voice powered by Amazon Connect, increasing visibility into Saks' contact center operations, and enabling the collection, analysis, storage, and use of customer call data to generate insights, optimize agent performance, and enhance customer service operations across hundreds of agents operating in multiple countries.

15. Defendant Accenture LLP is a limited liability partnership company and is a global professional services firm that provides cloud consulting, AWS based implementation services, application modernization, managed services, customer service transformation, retail industry consulting, and AI driven analytics at enterprise scale. Accenture LLP publicly represents that it partners with Amazon Web Services and other technology providers to design, implement, operate, and optimize cloud-based platforms and customer service systems for large retail and consumer facing businesses.

16. NeuraFlash is now part of Accenture LLP. Accenture LLP has publicly announced that NeuraFlash's Salesforce, Amazon Web Services, generative AI, and contact center expertise has been integrated into Accenture LLP's technology and managed services offerings.

17. Plaintiff is informed and believes, and thereon alleges, that through their roles as implementation partners, managed service providers, and operators of Saks' contact center infrastructure, Defendants' employees, agents, and representatives were directed, trained, and instructed to design, implement, configure, operate, optimize, and support call recording and

monitoring technology used in Saks OFF 5th's 5th'scustomer service operations, including inbound telephone calls involving California callers using cellular or cordless telephones.

18. The true names and capacities of defendants sued in this Complaint as DOES 1 through 100, inclusive, are currently unknown to Plaintiff, who therefore sues such defendants by such fictitious names. Plaintiff will amend this Complaint to reflect the true names and capacities of the defendants designated herein as DOES 1 through 100 when such identities become known. For ease of reference, Plaintiff will refer to the named defendants Accenture LLP and Neuraflash and the DOE defendants collectively as "Defendants."

**FACTUAL ALLEGATIONS**

19. On June 18, 2025 and thereafter on July 1, 2025, while located within the State of California, Plaintiff placed inbound telephone calls while using her cellular telephone. On both occasions, Plaintiff called Saks OFF 5th's customer service telephone number at 801-207-7043.

20. During the call on June 18, 2025, Plaintiff obtained information from a live customer service representative regarding merchandise and made a purchase with the representative over the telephone. Thereafter, on July 1, 2025, Plaintiff again called Saks OFF 5th's customer service telephone number at 801-207-7043 regarding the original purchase (Order Number: 126363250) and inquired about Saks OFF 5th's return and refund policy with a live representative.

21. Plaintiff is informed and believes, and based thereon alleges, that the customer service telephone number connected Plaintiff to Saks' live customer service representatives through a contact center platform and telephony system that had been designed, implemented, configured, and operated by Defendants on behalf of Saks as part of Saks' customer service operations.

22. On both occasions shortly after Plaintiff's telephone calls to Saks OFF 5th on June 18, 2025 and thereafter on July 1, 2025, Plaintiff received an email from Saks OFF 5th as part of a customer care survey in connection with her customer service experience with the live customer service representatives.

23. During these inbound telephone communications, Plaintiff disclosed sensitive,

CLASS ACTION COMPLAINT

7
A-8

private, and confidential personal and financial information, including but not limited to her full name, home address, email address, cellular telephone number, and credit card information. At no point during any of these inbound telephone communications was Plaintiff informed that her calls were being recorded and/ or monitored. At no point did Plaintiff give her consent for the telephone communications to be recorded or monitored, and she was entirely unaware that such recording or monitoring was occurring during the calls.

24.     Plaintiff is informed and believes, and based thereon alleges, that these inbound telephone communications were recorded and/ or monitored without her knowledge or consent through call recording and monitoring technology designed, implemented, configured, and operated by Defendants on behalf of Saks as part of Saks' customer service operations.

25.     As publicly represented by NeuraFlash through its website and published video content, NeuraFlash partnered with Saks to transform Saks' customer service operations and migrate Saks' contact center from an on premise telephony system to Amazon Connect. NeuraFlash's website contains a video featuring a Saks executive, Hexin Wilson, identified in the transcript as the "VP of customer experience and servicing" for Saks. The video description states the following: "[Saks] goal was to transform the philosophy of service by smoothing out friction points in the customer journey, so they needed a solution that could set them up for success. They partnered with NeuraFlash to migrate onto Amazon Connect in only two months and their contact center experienced zero downtime throughout the process!"

26.     In that video, Wilson describes using Amazon Connect and Salesforce-integrated tooling in the Saks contact center, including that "within the IVR itself we're able to collect utterances," which "gives you insights," and that this allows Saks to get customers "as quickly as possible to the person in the right role to service them." Wilson further states that "Contact Lens is the one that's triggering the signals for it to pop up on the agent side," and that Saks was "looking at automatically tagging calls," which provides "predictability" and "consistency," and allows Saks to "reduce agent workload." Wilson further states that Saks was "really excited about the agent evaluation form," and states: "imagine a world where 100% of our calls is evaluated," describing the ability to evaluate calls at scale through the Amazon Connect and Salesforce-

integrated systems.

27. Wilson further states that Saks "have to pick a partner" to "migrate onto connect as quickly as possible and with zero downtime," and states that Saks was "so glad that we made the decision because we were able to transition our entire contact center in two months with zero downtime." Plaintiff is informed and believes, and based thereon alleges, that NeuraFlash was the partner referenced in this public video content published by NeuraFlash regarding Saks' contact center migration and operation.

28. NeuraFlash also publicly represents on its website, under a "customers we love" section, that Saks is a customer and that "NeuraFlash, AWS & Salesforce partner to transform Saks' Contact Center." NeuraFlash further represents that "Investing in Service Cloud Voice, powered by Amazon Connect has increased visibility into Saks contact center, allowing them to make better data driven decisions," and that "with 400+ agents in numerous countries, Saks recognized the importance of having a strong change management," and that working with NeuraFlash "has allowed them to see long term, successful change."

29. In additional video content published online and titled "Saks, First Advantage and Symetra Transform Customer Experience with Salesforce, Amazon, and NeuraFlash," a NeuraFlash executive, Joana Bird, identifies herself as "the VP of sales for AWS at NeuraFlash," and states that "NeuraFlash is both an AWS and Salesforce consulting partner and implementation partner," and that NeuraFlash "focus[es] on the contact center and help[s] customers with their end-to-end journey" through "advisory and implementation for customer experience transformation." In that same video, speakers describe migrating from "on-prem telephony to Amazon Connect," and again state that they were able to "transition our entire contact center in two months with zero downtime," in connection with Saks' migration and implementation.

30. NeuraFlash further publicly represents that it provides ongoing post implementation and managed services for Amazon Connect based contact centers, including analytics, insights, optimization, and continuous enhancement of contact center functionality. Plaintiff is informed and believes, and based thereon alleges, that through these services,

CLASS ACTION COMPLAINT

A-10

NeuraFlash maintained ongoing involvement in the operation and optimization of call recording and monitoring technology used in Saks' customer service environment during the Class Period.

31.     Accenture LLP has publicly announced that NeuraFlash is now part of Accenture LLP and that NeuraFlash's Amazon Web Services, Salesforce, and contact center expertise has been integrated into Accenture LLP's technology and managed services offerings. Accenture LLP publicly represents on its website that it provides cloud consulting services, AWS-based implementation, managed services, customer service transformation, and retail industry consulting, including the design, modernization, operation, and optimization of cloud-based customer service platforms and AI-driven customer engagement systems.

32.     Accenture LLP further publicly represents that it helps organizations modernize and operate cloud infrastructure, customer service platforms, and data-driven customer experience systems, including through partnerships with Amazon Web Services and other cloud providers, and that it delivers customer service solutions intended to automate, monitor, analyze, and optimize customer interactions at scale. Plaintiff is informed and believes, and based thereon alleges, that these publicly described services encompass the type of cloud-based call recording, monitoring, analytics, and evaluation systems used in Saks' customer service operations during the Class Period.

33.     Plaintiff is informed and believes, and based thereon alleges, that through their roles as implementation partners, managed service providers, and operators of Saks' contact center infrastructure, Defendants intentionally utilized certain computer hardware, software, cloud platforms, and related tools ("Call Recording and/or Monitoring Technology") to execute a company-wide policy and practice of recording and/ or monitoring inbound telephone communications with callers, including California callers.

34.     Plaintiff is further informed and believes, and based thereon alleges, that Defendants installed, configured, and utilized this Call Recording and/or Monitoring Technology on Saks' consumer facing customer service telephone line, enabling the recording, monitoring, storage, tagging, and analysis of inbound telephone communications with callers, including Plaintiff,  and allowed them to store and tag these recordings for various purposes.

CLASS ACTION COMPLAINT

A-11

35.     Defendants failed to verbally warn Plaintiff, at the outset of the telephone communications, of Defendants' intent to record and/ or monitor the communications. Defendants failed to provide an automated, prerecorded warning at the call outset that the communications were being recorded or monitored. Plaintiff did not give, and could not have given, consent for the recording or monitoring of the telephone communications because she was entirely unaware that such recording or monitoring was occurring.

36.     Because Defendants failed to warn Plaintiff at the outset of the telephone communications that the communications were being recorded and/ or monitored and failed to obtain her consent, Plaintiff had an objectively reasonable expectation that her telephone communications were not being recorded or monitored. That recording and/ or monitoring occurred without her consent, was highly offensive to Plaintiff, and would be highly offensive to a reasonable person, including members of the Class.

37.     Plaintiff is further informed and believes, and based thereon alleges, that Defendants' employees, agents, and representatives were directed, trained, and instructed to design, implement, operate, optimize, and support the Call Recording and/ or Monitoring Technology used in Saks' customer service operations, and that Defendants recorded and/ or monitored inbound telephone communications made to Saks' customer service telephone number at 801-207-7043 from California callers, including Plaintiff, without their consent.

## CLASS ALLEGATIONS

38.     Plaintiff brings this lawsuit on behalf of an ascertainable statewide Class consisting of the following (the "Class"):

> All persons who, while located in California at any time during the two-year period of time preceding the filing of the Complaint in this matter and until said practice is terminated ("Class Period"), called  Saks OFF 5th's customer service telephone number, from a cellular or cordless telephone, engaged in a telephone conversation and were recorded and/or monitored by Defendants without warning or disclosure at the call outset.

CLASS ACTION COMPLAINT

A-12

39. Excluded from the Class are all employees of Defendants, all attorneys and employees of Defendants' counsel, all attorneys and employees of Plaintiff's Counsel, and the judicial officers to whom this matter is assigned and their staff.

40. Plaintiff reserves the right under Rule 3.765 of the California Rules of Court to amend or otherwise alter the Class definition presented to the Court at the appropriate time, or propose or eliminate subclasses, in response to facts learned through discovery, legal argument advanced by Defendants, or otherwise.

41. This action has been brought and may properly be maintained as a class action pursuant to California Code of Civil Procedure § 382, and case law thereunder, to which the California trial courts have been directed by the California Supreme Court to look for guidance.

42. The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time, Plaintiff estimates that there are more than 100 persons. Moreover, Plaintiff alleges that the precise number of Class members and their location can be ascertained through appropriate discovery and records held by Defendants and/or Defendants' telephone company's and/or other telecommunications and service providers' records regarding calls from California area codes to Defendants' customer service telephone number. Such records, including without limitation call detail records, purchase records, customer records, call lists, and the secret recordings themselves, can be used to determine the size of the Penal Code § 632.7 Class and to determine the identities of individual Penal Code § 632.7 Class members. This information may then be used to contact potential Class members.

43. There is a well-defined community of interest in the questions of law and fact affecting the parties represented in this action.

44. Common questions of law and fact exist as to all members of the Class. These common questions predominate over the questions affecting only individual members of the Class.

45. Among the questions of law and fact common to the Class are, *inter alia*:

CLASS ACTION COMPLAINT

A-13

a. Whether Defendants have or had a policy and practice of recording and/or monitoring inbound telephone calls made to Saks OFF 5th's customer service number;

b. Whether Defendants installed Call Recording and/or Monitoring Technology to implement their policy of recording and/or monitoring inbound telephone calls with callers;

c. Whether Defendants' employees, agents, or representatives were directed, trained, and instructed to, and did, record and/or monitor inbound telephone calls with callers in order to implement Defendants' policy and practice of recording and/or monitoring telephone calls with callers;

d. Whether Defendants' policy and practice of recording and/or monitoring inbound telephone calls included a policy and practice of warning Class members, including Plaintiff, at the outset of each recorded and/or monitored telephone call that the telephone call was being recorded and/or monitored;

e. Whether Defendants have or had a policy or practice of not obtaining consent to record and/or monitor telephone calls made to Saks OFF 5th's customer service number;

f. Whether Defendants' recording and/or monitoring of Plaintiff's and Class members' inbound telephone calls without warning or disclosure at the call outset constitutes violations of California Penal Code § 632.7;

g. Whether Plaintiff and each Class member are entitled to statutory damages of five thousand dollars ($5,000) under California Penal Code § 637.2(a)(1) for each violation of California Penal Code § 632.7; and

h. Whether Defendants failed to warn Class members who participated in an inbound telephone call with Defendants that the telephone call was being recorded and/or monitored;

i. Whether Plaintiff and Class members are entitled to injunctive relief under

CLASS ACTION COMPLAINT

A-14

California Penal Code § 637.2(b) to enjoin or restrain Defendants from committing further violations of California Penal Code § 632.7.

46.     Plaintiff's claims are typical of the claims of all of the other members of the Class. Plaintiff's claims and the Class members' claims are based on the same legal theories and arise from the same unlawful conduct, resulting in the same injury to Plaintiff and to all of the other Class members.

47.     Plaintiff will fairly and adequately represent the interests of the Class. Plaintiff has no conflicts of interest with other Class members, is subject to no unique defenses, and has retained counsel competent and experienced in the prosecution of complex litigation and class actions.

48.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy because joinder of all members is impracticable, the damages suffered by each Class member are low, the likelihood of individual Class members prosecuting separate claims is remote, and individual Class members do not have a significant interest in individually controlling the prosecution of separate actions. Relief concerning Plaintiff's rights under the laws alleged herein and with respect to the Class as a whole would be appropriate. Plaintiff knows of no difficulty to be encountered in the management of this action which would preclude its maintenance as a class action.

49.     The prosecution of individual actions by California Penal Code § 632.7 Class members would run the risk of establishing inconsistent standards of conduct for Defendants.

50.     Defendants have acted, or refused to act, on grounds generally applicable to the Class, thereby making injunctive relief and statutory damages pursuant to California Penal Code § 637.2 appropriate with respect to the Class as a whole. Likewise, Defendants' conduct as described above is unlawful, capable of repetition, and could continue unless restrained and enjoined by the Court.

51.     Plaintiff explicitly reserves the right to add additional class representatives, provided that Defendants are given an opportunity to conduct discovery on the chosen representative(s). Plaintiff will identify and propose class representatives with the filing of

CLASS ACTION COMPLAINT

A-15

Plaintiff's motion for class certification.

**FIRST CAUSE OF ACTION**

**FOR VIOLATIONS OF CALIFORNIA PENAL CODE § 632.7**

**(By Plaintiff and the Class Against Defendants Accenture LLP and NeuraFlash, and**

**Does 1 through 100, Inclusive)**

52. Plaintiff re-alleges and incorporates by reference the allegations contained in the preceding paragraphs above as if fully set forth herein and further alleges as follows.

53. On June 18, 2025 and thereafter on July 1, 2025, and while physically present in California, Plaintiff used her cellular telephone to dial Saks OFF 5th's customer service telephone number, which was operated through call recording and monitoring systems designed, implemented, configured, and operated by Defendants, at 801-207-7043 and participated in telephone communications with customer service representatives whose calls were recorded and/or monitored by Defendants.

54. Plaintiff alleges on information and belief that, within the applicable statute of limitations, Plaintiff and the Class members, while physically present in California, called Saks OFF 5th's customer service telephone number and participated in telephone communications that were recorded and/or monitored by Defendants, while using a cellular or cordless telephone, which communications were recorded and/or monitored by Defendants without the consent of Plaintiff and the Class members. Defendants did not notify Plaintiff and the Class members at the call outset that their communications were being recorded and/or monitored. Nor did Defendants provide an automated, pre-recorded warning at the call outset that their communications were being recorded and/or monitored.

55. Penal Code § 632.7 prohibits the recording or monitoring of *any* communication without the consent of all parties where at least one of the parties to the communication is using a cellular or cordless telephone. There is no requirement under Penal Code § 632.7 that the communication be confidential. Defendants violated Penal Code § 632.7 in their telephone communications with Plaintiff and the Class during the Class Period. Plaintiff is informed and believes and thereon alleges that Defendants, as a standard business practice, has intentionally

CLASS ACTION COMPLAINT

A-16

made use of a Call Recording and/or Monitoring Technology that enabled Defendants to surreptitiously record and/or monitor communications with Plaintiff and the Class members that were made to Saks OFF 5th's customer service telephone number, on cellular or cordless telephones, without obtaining their consent.

56. Because Defendants did not disclose to Plaintiff or Class members who called Saks OFF 5th's customer service telephone number, at the call outset, that their calls were being recorded and/or monitored, Defendants did not obtain, and could not have obtained, Plaintiff's or Class members' consent to the recording or monitoring of those conversations. Indeed, Plaintiff and the Class had an objectively reasonable expectation that their calls were not being recorded and/or monitored. That expectation and its objective reasonableness arises, in part, and is supported by the fact that:

    a. Defendants are required by law to inform persons it receives calls from, at the outset of the communication, of its intent to record and/or monitor the calls;

    b. Businesses that record and/or monitor telephone calls customarily do so inform the persons they receive calls from, at the outset of the communication; and

    c. Defendants did not inform Plaintiff and Class members who called Saks OFF 5th's customer service telephone number, at the outset of the communications, that their telephone communications were being recorded and/or monitored, nor did Defendants seek to obtain their consent to record and/or monitor.

57. In the business-call context, the California Supreme Court has stated, "in light of the circumstances that California consumers are accustomed to being informed at the outset of a telephone call whenever a business entity intends to record the call, it appears equally plausible that, in the absence of such an advisement, a California consumer reasonably would anticipate that such a telephone call is not being recorded, particularly in view of the strong privacy interest most persons have with regard to the personal financial information frequently disclosed in such calls." *Kearney v. Salomon Smith Barney, Inc.*, 39 Cal. 4th 95, 118 (2006).

58. Due to these violations as set forth herein, Plaintiff and Class members are entitled

to an award of five thousand dollars ($5,000) per violation pursuant to California Penal Code § 637.2(a)(1), even in the absence of proof of actual damages, an amount deemed proper by the California Legislature. Plaintiff and the Class are also entitled to injunctive relief to enjoin further violations pursuant to California Penal Code § 637.2(b).

59.     Plaintiff and Class members are entitled to recover reasonable attorneys' fees pursuant to California Code of Civil Procedure § 1021.5, the substantial benefit doctrine and/or the common fund doctrine.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff on behalf of herself and members of the Class, prays for judgment against Defendants as follows:

a.  For an order certifying this matter as a class action;

b.  For an order declaring that Defendants' actions, as described herein, violate California Penal Code §632.7;

c.  For an order awarding Plaintiff and each member of the Class statutory damages of five thousand dollars ($5,000) per violation under California Penal Code § 637.2(a)(1);

d.  For appropriate injunctive relief under California Penal Code § 637.2(b);

e.  For an award of attorneys' fees as authorized by statute including, but not limited to, the provisions of California Code of Civil Procedure § 1021.5, and as authorized under the "common fund" doctrine, and as authorized by the "substantial benefit" doctrine;

f.  For the costs of the suit incurred herein;

g.  For prejudgment interest at the legal rate;

h.  For such further relief as this Court deems necessary, just, and proper.

///

///

///

///

CLASS ACTION COMPLAINT

///

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury for Plaintiff and the Class on all claims so triable.


Respectfully Submitted this 10th Day of February, 2026.


**LAW OFFICES OF TODD M. FRIEDMAN, P.C.**

**LAW OFFICES OF ZEV B. ZYSMAN, APC**


By:    /s/ Todd M. Friedman
       Todd M. Friedman
       Adrian R. Bacon
       Law Offices of Todd M. Friedman
       Attorneys for Plaintiff

CLASS ACTION COMPLAINT

A-19